# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 19-cv-23110-BLOOM/Louis

CHRISTOPHER MAURICE MCDOWELL,

      Plaintiff,

v.

JOSE GONZALEZ and DAVID COLON,

      Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendants Jose Gonzalez and David Colon's

(collectively, "Defendants") Motion to Dismiss the Amended Complaint, ECF No. [47]

("Motion"). Plaintiff Christopher Maurice McDowell ("Plaintiff") filed his response in opposition

to the Motion, ECF No. [54] ("Response"), to which Defendants filed a Reply, ECF No. [56]

("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions,

the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth

below, Defendants' Motion is granted.

## I. BACKGROUND

*Pro se* Plaintiff initiated this action on July 26, 2019, ECF No. [1] ("Complaint"), which

he amended on October 9, 2019, ECF No. [39] ("Amended Complaint"), pursuant to this Court's

Order, ECF No. [34].[1] The Amended Complaint alleges facts surrounding a false arrest, assault,

---

[1] On October 3, 2019, this Court granted in part and denied in part Defendants' Motion to Dismiss the
Complaint or, Alternatively, for a More Definite Statement, ECF No. [21], and ordered Plaintiff to amend
his Complaint to clearly set forth the legal claims he was asserting, ECF No. [34] ("Order on Motion to
Dismiss"). Specifically, the Court ordered that "Plaintiff must set forth each individual cause of action in
separate, clearly noted counts and must provide the legal grounds and the facts that support each of the
counts alleged." ECF No. [34] at 6 (emphasis omitted).

and unlawful detention, against Defendants Jose Gonzalez, an officer of the Miami-Dade Police Department ("MDPD"), and David Colon, an MDPD sergeant. *See* ECF No. [39]. Plaintiff's Amended Complaint describes incidents that transpired on March 19, 2019, at a Dunkin' Donuts. *Id.* at 3-4. Specifically, Plaintiff alleges that he entered the Dunkin' Donuts to purchase coffee and that, after repeatedly attempting to purchase coffee but being denied, he engaged in a verbal altercation with the cashier. The altercation ultimately resulted in Plaintiff leaving the store. *Id.* Plaintiff was later apprehended by MDPD officers after they received a complaint that a man had entered Dunkin' Donuts, stolen $7.00 out of the tip jar, and fled on foot. *Id.* at 6. Plaintiff was arrested, charged with petit theft, and held in jail overnight until he was brought to state court and released on his own recognizance. *Id.* at 7-11. The Amended Complaint indicates that the petit theft case against Plaintiff was ultimately dismissed. *Id.* at 10-11, 12.

Plaintiff's Amended Complaint describes numerous conversations between Plaintiff and Officer Gonzalez, during which Plaintiff repeatedly stated that he had not stolen any money from the tip jar. Moreover, he alleges that there were surveillance cameras at Dunkin' Donuts and Plaintiff alleges that Officer Gonzalez indicated he had watched at the time Plaintiff was arrested. Plaintiff asserts that the video would clearly establish Plaintiff's innocence. *Id.* at 6-7. Plaintiff alleges that he was illegally arrested because, if Officer Gonzalez had watched the Dunkin' Donuts surveillance camera footage as he claimed, he would have known that Plaintiff had not actually stolen any money from the tip jar. *Id.* Additionally, Plaintiff alleges that he was illegally arrested and detained for a crime he did not commit and that, while being arrested, he was "ruffed [sic] up, assaulted, life endangerment, . . . mentally distressed, detained for hours in jail." *Id.* at 12-13.

In the instant Motion, Defendants move for dismissal with prejudice pursuant to Rule 12(b)(6), arguing that Plaintiff's Amended Complaint is a shotgun pleading and that Defendants

are entitled to qualified immunity based on their probable cause to arrest Plaintiff. ECF No. [47] at 1-2. Defendants include, as as an exhibit to their Motion, a copy of Officer Gonzalez's bodycam video footage from the night of the arrest, along with a certified partial translation of certain conversations in Spanish between Officer Gonzalez and a Dunkin' Donuts employee during the investigation. ECF No. [48].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a Rule 12(b)(6) motion, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court generally must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in plaintiff's favor. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002). Nonetheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach*

*Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). On a 12(b) motion, courts are generally limited to the facts contained in the complaint and attached exhibits. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002))).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). This leniency, however, does not confer on *pro se* litigants "a right to receive special advantages not bestowed on other litigants. [The *pro se* litigant] must, for example, abide by local rules governing the proper form of pleadings." *Procup v. Strickland*, 760 F.2d 1107, 1115 (11th Cir. 1985). Further, courts cannot serve as *de facto* counsel for a party and cannot rewrite a deficient pleading for the sake of sustaining an action. *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1264 (S.D. Fla. 2004). The Court cannot simply "fill in the blanks" to infer a claim, *Brinson v. Colon*, 2012 WL 1028878, at *1 (S.D. Ga. Mar. 26, 2012), as "it is not the Court's duty to search through a plaintiff's filings to find or construct a pleading that satisfies Rule 8," *Sanders v. United States*, 2009 WL 1241636, at *3 (N.D. Ga. Jan. 22, 2009); *see Bivens v. Roberts*, 2009 WL 411527, at *3 (S.D. Ga. Feb. 18, 2009) ("[J]udges must not raise issues and arguments on plaintiffs' behalf, but may only construe pleadings liberally given the linguistic imprecision

that untrained legal minds sometimes employ." (citing *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008))). In determining whether a *pro se* litigant has stated a claim, "the court ought not penalize the litigant for linguistic imprecision in the more plausible allegations," while keeping in mind that "wildly implausible allegations in the complaint should not be taken to be true." *Miller*, 541 F.3d at 1100.

## III. DISCUSSION

### A. Shotgun Pleading

In their Motion, Defendants first argue that the Court should dismiss Plaintiff's Amended Complaint with prejudice because it is an improper shotgun pleading. Specifically, Defendants assert that the failure to correct the deficiencies in Plaintiff's original Complaint — regarding the failure to clearly set forth each individual legal claim asserted — in his Amended Complaint warrants dismissal. Plaintiff's Response does not specifically address or rebut Defendants' arguments that the Amended Complaint constitutes a shotgun pleading.

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim" that shows that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Complaints that fail to comply with these rules are sometimes referred to as "shotgun pleadings." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Court of Appeals for the Eleventh Circuit has identified four categories of shotgun pleadings:

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject

reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland*, 792 F.3d at 1321-23; *see also Jackson v. Bank of Am., N.A.*, 898 F.3d 1348 (11th Cir. 2018). Shotgun pleadings fail to make the connection between "the substantive count and the factual predicates . . . [such that] courts cannot perform their gatekeeping function with regard to the averments of [the claim]." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279-80 (11th Cir. 2006); *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 205 F.3d 1293, 1295 (11th Cir. 2002) (explaining that a shotgun pleading is one that contains "several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions"); *Pelletier v. Zweifel*, 921 F.2d 1465, 1517-18 (11th Cir. 1991) (describing such pleadings as "replete with factual allegations that could not possibly be material to any of the causes of action they assert"); *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008) (term also refers to pleadings that are "replete with factual allegations and rambling legal conclusions"); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979-80 (11th Cir. 2008) (condemning shotgun pleading that bunched together "untold causes of action" in one count).

"Generally, when 'a more carefully drafted complaint' might state a claim, the plaintiff must be given a chance to amend before dismissal." *Hollis v. W. Acad. Charter, Inc.*, 782 F. App'x 951, 955 (11th Cir. 2019) (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)). "However, the district court need not provide such an opportunity where the plaintiff has

repeatedly failed to cure deficiencies in his complaint through previous amendments or where amendment would be futile." *Id.* (quoting *Bryant*, 252 F.3d at 1163). As such, dismissal of a shotgun pleading with prejudice for a repeated pleading defect is warranted where the plaintiff was previously given an opportunity to amend the complaint to correct the defect, but failed to do so. *See Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1239 (11th Cir. 2000); *Isbrandtsen Marine Servs., Inc. v. M/V INAGUA Tania*, 93 F.3d 728, 734 (11th Cir. 1996).

At the outset, the Court notes that Plaintiff's Amended Complaint once again fails to set forth his claims in accordance with federal pleading standards. In the Amended Complaint, *pro se* Plaintiff has fully alleged the facts of his case, but he has again failed to set forth any clearly delineated legal claims or any legal basis upon which his suit is based. *See* ECF No. [39]. Plaintiff's Amended Complaint falls into multiple shotgun pleading categories. First, the Amended Complaint is plagued with "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. Second, Plaintiff's Amended Complaint does not separate each cause of action or claim for relief into different counts or specify which claim applies to which Defendant. *Id.* at 1323. Nor does the Amended Complaint specify which of the Defendants are responsible for which acts or omissions. *Id.* Rather, Plaintiff's Amended Complaint is "replete with factual allegations that could not possibly be material to any of the causes of action [he] assert[s]," *Pelletier*, 921 F.2d at 1517-18 (11th Cir. 1991), and it improperly bunches together all of Plaintiff's "untold causes of action" into one count, *Davis*, 516 F.3d at 979-80. Thus, the Court finds that Plaintiff's Amended Complaint constitutes a shotgun pleading warranting dismissal on its own. *See Stevens*, 215 F.3d at 1239; *Toth v. Antonacci*, No. 19-10564, 2019 WL 4926961, at *2 (11th Cir. Oct. 7, 2019) (concluding that the district court did not abuse its discretion in dismissing a *pro se* plaintiff's amended complaint as an improper

shotgun pleading after the plaintiff failed to correct the pleading deficiencies from the original complaint).

The Court is nonetheless mindful of the fact that Plaintiff is *pro se* and is therefore entitled to some leniency. Thus, the Court will consider whether the Amended Complaint, construed in the light most favorable to Plaintiff, states a plausible claim against each Defendant upon which relief can be granted for what the Court believes to be a false arrest claim, pursuant to 42 U.S.C. § 1983..

**B. Qualified Immunity**

On the merits, Defendants argue that Plaintiff's Amended Complaint should be dismissed because they are entitled to qualified immunity on Plaintiff's false arrest claim. Specifically, Defendants argue that Officer Gonzalez's bodycam footage clearly establishes that the Defendants had probable cause to arrest Plaintiff, based on the reported theft, multiple witnesses' testimony identifying Plaintiff and corroborating the alleged tip theft, and the victim's positive identification of Plaintiff as the perpetrator in a show up. Plaintiff, on the other hand, argues that Defendants are not entitled to qualified immunity because they violated his constitutional rights by (1) lying to him and claiming that they had seen the Dunkin' Donuts surveillance video of Plaintiff stealing the tip money and (2) illegally arresting him, despite his innocence.

Although courts are generally limited to the facts contained in the complaint and attached exhibits when analyzing a motion to dismiss, *Wilchombe*, 555 F.3d at 959, a document outside the four corners of the complaint may still be considered if "a plaintiff refers to [the] document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007); *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic

document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (stating that "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute"). In his Response, not only does Plaintiff not dispute the contents or authenticity of Officer Gonzalez's bodycam footage, he actually agrees that the Court should consider the footage and describes it as his "reason for filing this lawsuit." ECF No. [54] at 8. Thus, the Court will consider the bodycam footage, and the corresponding certified translation, in addressing Defendants' Motion as this evidence is central to Plaintiff's claim and its authenticity is not challenged. *SFM Holdings, Ltd.*, 600 F.3d at 1337.

### 1. Qualified Immunity Defense Generally

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)); *see also Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law," *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). The qualified immunity doctrine accordingly represents "a balance between the need for a remedy to protect citizens' rights and the need for government officials to perform their duties without the fear of constant, baseless litigation." *Kingsland*, 382 F.3d at 1231 (citation omitted). Accordingly, "[q]ualified immunity is, as the term implies, qualified. It is not absolute." *Id.* at 1233.

"Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). To prevail on a motion to dismiss based on qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place." *Storck*, 354 F.3d at 1314 (citing *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)).

"A government official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties; and (2) within the scope of his authority." *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1144 (11th Cir. 2017) (citing *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995)). "In applying each prong of this test, [courts] look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). "In other words, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Mikko*, 857 F.3d at 1144 (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).

Here, Defendants' challenged actions concerned their investigation into the alleged tip theft and Plaintiff's subsequent arrest while they were on duty as police officers acting pursuant to the performance of their duties. Thus, Defendants in this case "readily satisfied [the discretionary authority] requirement, as they undertook all the challenged actions while on duty as police officers conducting arrest and investigative functions." *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir.

2019). "Once the public official has established that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity does not apply." *Storck*, 354 F.3d at 1314 (citing *Lee*, 284 F.3d at 1194). Thus, because Defendants have readily satisfied the discretionary authority requirement, Plaintiff bears the burden of establishing that their defense of qualified immunity is inapplicable.

The United States Supreme Court has outlined a two-part test to determine whether a plaintiff meets its burden on rebutting a qualified immunity defense: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and (2) if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Moreover, courts "may consider these two prongs in either order; an official is entitled to qualified immunity if the plaintiff fails to establish either." *Piazza v. Jefferson Cty., Ala.*, 923 F.3d 947, 951 (11th Cir. 2019) (citing *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1344 (11th Cir. 2016)).

"[O]nly Supreme Court cases, Eleventh Circuit caselaw, and [Florida] Supreme Court caselaw can 'clearly establish' law in this circuit." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003) (citing *Hamilton By & Through Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.1 (11th Cir. 1996)). The essence of this inquiry is the "public official's objective reasonableness, regardless of his underlying intent or motivation." *Kingsland*, 382 F.3d at 1231-32 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *Lee*, 284 F.3d at 1195). "To be clearly established, the contours of an asserted constitutional right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"[I]n the light of pre-existing law, the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. "Qualified immunity 'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" *Kingsland*, 382 F.3d at 1231-32 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Nonetheless, "[t]he Supreme Court and [the Eleventh Circuit] have stated that a plaintiff cannot strip a § 1983 defendant of his qualified immunity by citing to general rules or abstract rights." *Jones*, 174 F.3d at 1282 (citing *Anderson*, 483 U.S. at 639); *see Walker v. Schwalbe*, 112 F.3d 1127, 1132 (11th Cir. 1997) ("Plaintiffs may not discharge their burden [of showing that a right is clearly established] by referring to general rules and abstract rights."). "Qualified immunity focuses on the actual, specific details of concrete cases." *Walker*, 112 F.3d at 1132.

Additionally, "[b]ecause § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) (quoting *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam)). Thus, in conducting a § 1983 analysis, courts must "evaluate a given defendant's qualified-immunity claim, considering only the actions and omissions in which that particular defendant engaged." *Id.* Accordingly, the Court will individually address each Defendant's actions below.

### 2. Officer Gonzalez

In his Amended Complaint, Plaintiff alleges that he was illegally arrested by Defendants. Thus, the Court will engage in a qualified immunity analysis for a claim of false arrest.

"The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' If there has been no such deprivation, the state of mind of the defendant is wholly immaterial." *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

"A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim. An arrest made with probable cause, however, constitutes an absolute bar to a section 1983 action for false arrest." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990)). Likewise, "[u]nder the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved." *Pierson v. Ray*, 386 U.S. 547, 555 (1967). "That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself." *Marx*, 905 F.2d at 1507.

"Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007); *see also Ortega*, 85 F.3d at 1525 ("Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." (citing *Marx*, 905 F.2d at 1505)). "An arresting officer is required to conduct a reasonable investigation to establish probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1435-36 (11th Cir. 1998) (citing *Tillman v. Coley*, 886 F.2d 317, 321 (11th Cir. 1989)). "An officer, however, need not take 'every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person.' Furthermore, once an officer makes an arrest based

upon probable cause, he 'need not "investigate independently every claim of innocence."'" *Id.* at 1436 (quoting *Tillman*, 886 F.2d at 321). "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" *Ortega*, 85 F.3d at 1525 (quoting *Marx*, 905 F.2d at 1506); *see Rankin*, 133 F.3d at 1436 ("Probable cause is 'judged not with clinical detachment but with a common sense view to the realities of normal life.'" (quoting *Marx*, 905 F.2d at 1506)).

> But even in the absence of actual probable cause, the arresting officer will be entitled to qualified immunity if he shows at least "arguable probable cause to believe that a person is committing a particular public offense." [*Redd v. City of Enterprise*, 140 F.3d 1378, 1384 (11th Cir. 1998).] We ask whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest." *Id.* at 1382. An officer's "underlying intent or motivation" is irrelevant. *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). . . .
>
> The existence of arguable probable cause "depends on the elements of the alleged crime and the operative fact pattern." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010). But "[a]rguable probable cause does not require an arresting officer to prove every element of a crime." *Scarbrough v. Myles*, 245 F.3d 1299, 1302–03 (11th Cir. 2001). . . . "The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Bailey v. Bd. Of Cty. Comm'rs*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992). "Where an officer arrests without even arguable probable cause, he violates the arrestee's clearly established Fourth Amendment right to be free from unreasonable seizures." *Carter v. Butts Cty., Ga.*, 821 F.3d 1310, 1320 (11th Cir. 2016).

*Longino v. Henry Cty., Ga.*, No. 19-10162, 2019 WL 5597647, at *3 (11th Cir. Oct. 30, 2019).

Turning to the elements of the alleged crime, Plaintiff in the instant case was charged with petit theft.

> (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>
> (a) Deprive the other person of a right to the property or a benefit from the property.
>
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat. § 812.014. The theft of less than $300 in cash constitutes petit theft. *Id.* § 812.014(3)(a).

Given the elements of Plaintiff's alleged petit theft described above, the Court must examine whether "the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." *Ortega*, 85 F.3d at 1525 (citing *Marx*, 905 F.2d at 1505).

The operative facts relevant to the instant action are as follows. Plaintiff was stopped a few blocks away from the Dunkin' Donuts at issue by two police officers, and he indicated to the officers that he got into a verbal altercation with the Dunkin' Donuts cashier. Officer Gonzalez arrived on the scene a few minutes later, using a bodycam to record the entire series of events that led up to Plaintiff's ultimate arrest. The bodycam footage shows Plaintiff standing with the officers, dressed in a black t-shirt and blue jeans and wearing a backpack. After briefly speaking with Plaintiff about what transpired at the Dunkin' Donuts, Officer Gonzalez leaves and goes to the Dunkin' Donuts to interview the victim and any eyewitnesses.

At the Dunkin' Donuts, Officer Gonzalez and Sergeant Colon speak with a female eyewitness who initially called the police to report the theft. She describes the perpetrator as an African American, wearing a black t-shirt, blue jeans, and a backpack. Further, the female eyewitness and another male eyewitness both note that the perpetrator robbed the cashier's tips. Officer Gonzalez then approaches and interviews the victim, who describes the theft. During this conversation, another employee approaches Officer Gonzalez, who asks to see the security footage. The employee explains that the office is closed, but that Officer Gonzalez can come back the next morning at around 8:00 a.m. to watch the security video when the manager gets in and unlocks the office. Officer Gonzalez then returns to his conversation with the victim, who indicates that the perpetrator stole approximately $6.00 or $7.00.

Officer Gonzalez then confers with Sergeant Colon, and they decide to take the victim to do a show up to further corroborate that Plaintiff is the perpetrator. Sergeant Colon takes the victim in his patrol car to do the show up, while Officer Gonzalez returns to the location where Plaintiff is detained. Soon thereafter, Sergeant Colon calls Officer Gonzalez over the radio and indicates that the victim positively identified Plaintiff as the man who robbed the tip jar. Based on this positive identification, Officer Gonzalez tells Plaintiff that he is being arrested for theft for stealing the tip money and proceeds to search and arrest Plaintiff. During this time, Officer Gonzalez repeatedly states that he watched a video at Dunkin' Donuts that showed Plaintiff stealing the tip money, which Plaintiff vehemently denies. The remainder of the bodycam footage shows Plaintiff detained in the back of Officer Gonzalez's patrol car while Officer Gonzalez completes his arrest report. Officer Gonzalez then transports Plaintiff to the detention facility and escorts Plaintiff into the detention facility. The video then concludes.

Plaintiff has failed to allege any facts demonstrating that Officer Gonzalez acted without probable cause. *See Martin v. Wood*, 648 F. App'x 911, 916 (11th Cir. 2016). The facts known to Defendants at the time of Plaintiff's arrest establish that the officers has probable cause, namely, that Defendants received a criminal complaint of theft at Dunkin' Donuts, that numerous eyewitnesses gave statements that a man meeting Plaintiff's description was seen trying to steal money out of the tip jar, and that the victim positively identified Plaintiff as the perpetrator during a show up. The undisputed record reflects that Plaintiff's arrest was supported by probable cause.

Plaintiff argues that he repeatedly told Officer Gonzalez that the surveillance camera footage at Dunkin' Donuts would clearly establish Plaintiff's innocence, and that Officer Gonzalez's failure to watch this video prior to Plaintiff's arrest violated his constitutional rights. The Court is unpersuaded by this argument. Officers are "not required to forego arresting [a

suspect] based on initially discovered facts showing probable cause simply because [the suspect] offered a different explanation." *Marx*, 905 F.2d at 1507 n.6; *see also District of Columbia v. Wesby*, 138 S.Ct. 577, 588 (2018) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts."). During the investigation, Officer Gonzalez asked to see the security footage from the incident. However, he was told that the footage would not be available until the next morning when the manager came in to unlock the office. The Court finds Officer Gonzalez's investigation to be reasonable under the circumstances, especially in light of all of the other evidence establishing probable cause. "Though further investigation may have uncovered evidence exonerating [Plaintiff], probable cause does not require law enforcement officials to 'take every conceivable step at whatever cost, to eliminate the possibility of convicting an innocent person.'" *Martin*, 648 F. App'x at 916 (quoting *Rankin*, 133 F.3d at 1436). "In other words, there is no need for officers to 'investigate independently every claim of innocence.'" *Id.* (quoting *Baker*, 443 U.S. at 146).

Nor are officers "required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present[ed] a sufficient basis for believing that an offense ha[d] been committed." *Huebner v. Bradshaw*, 935 F.3d 1183, 1188 (11th Cir. 2019) (quoting *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002), *abrogated on other grounds by Lozman v. City of Riviera Beach*, 138 S.Ct. 1945 (2018)). "Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause." *Rankin*, 133 F.3d at 1441. Officers may also properly rely on a victim's identification of the accused during a show up, and on statements taken from eyewitnesses who observed the events in question. *Hendricks v. Sheriff, Collier Cty., Fla.*, 492 F. App'x 90, 93-94 (11th Cir. 2012); *L.S.T., Inc. v. Crow*, 49 F.3d 679, 684-85 (11th Cir. 1995). Indeed, the Eleventh Circuit has "previously found the statements of a single

witness sufficient to establish probable cause to arrest a suspect." *Martin*, 648 F. App'x at 916

(citing *Knight v. Jacobson*, 300 F.3d 1272, 1275 (11th Cir. 2002)).

> [I]f an unquestionably honest citizen comes forward with a report of criminal activity — which if fabricated would subject him to criminal liability — we have found rigorous scrutiny of the basis of his knowledge unnecessary. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case.

*Illinois v. Gates*, 462 U.S. 213, 233-34 (1983) (citing *Adams v. Williams*, 407 U.S. 143, 146-47

(1972)).

Here, Officer Gonzalez had more than enough evidence to support probable cause. First,

Defendants were dispatched to respond to a reported theft at Dunkin' Donuts, near where Plaintiff

was stopped. Upon arriving at the Dunkin' Donuts, Officer Gonzalez spoke with two eyewitnesses

who indicated that the perpetrator robbed the cashier's tips. Further, one of these eyewitnesses also

gave a description of the perpetrator, noting that he was an African American who "was wearing

a black . . . t-shirt," "blue jeans," and who "had a backpack," which matched Plaintiff's description.

In addition, the victim told Officer Gonzalez that the thief stole six or seven dollars out of the tip

jar. The victim also positively identified Plaintiff as the thief during the show up. The combination

of (1) the victim's criminal complaint reporting the theft, *Rankin*, 133 F.3d at 1441; (2) the

description given by one eyewitness that matched Plaintiff's description, *Martin*, 648 F. App'x at

916 (citing *Knight*, 300 F.3d at 1275); (3) the statements from two eyewitnesses who observed the

alleged theft, *L.S.T., Inc.*, 49 F.3d at 684-85; and (4) the victim's identification of the accused

during a show up, *Hendricks*, 492 F. App'x at 93-94 (citing *L.S.T., Inc.*, 49 F.3d at 684-85), was

more than sufficient to establish probable cause to arrest Plaintiff in this case.

Moreover, the fact that Officer Gonzalez indicated to Plaintiff that he watched the Dunkin'

Donuts surveillance video that showed Plaintiff stealing the tip jar money is unpersuasive in a

qualified immunity analysis. "The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Bailey*, 956 F.2d at 1119 n.4. Instead, the essence of qualified immunity inquiry is the "public official's objective reasonableness, regardless of his underlying intent or motivation." *Kingsland*, 382 F.3d at 1231-32 (citing *Harlow*, 457 U.S. at 819); *Lee*, 284 F.3d at 1195 (noting that an officer's "underlying intent or motivation" is irrelevant). Thus, Plaintiff's arrest in this case was not unconstitutional because "the facts and circumstances within [Officer Gonzalez's] knowledge, of which he [had] reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect [had] committed . . . [the] offense." *Ortega*, 85 F.3d at 1525 (citing *Marx*, 905 F.2d at 1505).

As noted above, "[a]n arrest made with probable cause . . . constitutes an absolute bar to a section 1983 action for false arrest." *Ortega*, 85 F.3d at 1525 (citing *Marx*, 905 F.2d at 1505). Thus, because Officer Gonzalez had probable cause to arrest Plaintiff, the Court concludes that he is entitled to qualified immunity. As such, Plaintiff's § 1983 claim fails. Likewise, "[u]nder the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved." *Pierson*, 386 U.S. at 555. "That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself." *Marx*, 905 F.2d at 1507. Here, Plaintiff's argument that the ultimate dismissal of his petit theft case supports his § 1983 claim for false arrest merits no weight in the Court's analysis.

For the reasons discussed above, the Court concludes that Officer Gonzalez is entitled to qualified immunity because he arrested Plaintiff based on the existence of probable cause that Plaintiff had stolen money out of the tip jar at Dunkin' Donuts.

### 3. Sergeant Colon

"The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (quoting *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)). Moreover, "[i]t is well established in [the Eleventh] Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation omitted) (internal quotation marks omitted). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citing *Gonzalez*, 325 F.3d at 1234); *see also Dukes v. Deaton*, 852 F.3d 1035, 1045-46 (11th Cir. 2017) ("A supervisor cannot be liable for the constitutional violation of his subordinate if the constitutional violation was not then clearly established."); *Keating*, 598 F.3d at 763 (explaining that supervising officers are only liable under § 1983 if subordinate officers violated clearly established law). A causal connection can be established in a number of different ways, including "by facts which support an inference that the supervisor directed the subordinates to act unlawfully." *Gonzalez*, 325 F.3d at 1234-35.

As discussed above, Officer Gonzalez is entitled to qualified immunity because he did not violate Plaintiff's Fourth Amendment rights when he arrested Plaintiff based on probable cause. Further, Plaintiff's Amended Complaint does not set forth any specific facts to support an inference that Sergeant Colon acted unlawfully or directed Officer Gonzalez to act unlawfully. *See id.* Thus, Plaintiff has failed to meet the "extremely rigorous" standard required to support a claim for

supervisory liability. *See id.* at 1234 (quoting *Braddy*, 133 F.3d at 802). Accordingly, consistent with the Court's conclusion above that Officer Gonzalez did not act unlawfully in arresting Plaintiff based on probable cause, the Court further concludes that Sergeant Colon did not violate Plaintiff's constitutional rights in participating in the investigation into and arrest of Plaintiff, based on the existence of probable cause to believe that Plaintiff stole money from the Dunkin' Donuts tip jar. *See Dukes*, 852 F.3d at 1045-46; *Keating*, 598 F.3d at 763.

Therefore, Defendants' Motion to Dismiss is granted.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss, **ECF No. [47]**, is **GRANTED**.

2. Plaintiff's Amended Complaint, **ECF No. [39]**, is **DISMISSED WITHOUT LEAVE TO AMEND**.

3. To the extent not otherwise disposed of, all pending motions are denied as **MOOT** and all deadlines are **TERMINATED**.

4. The Clerk of Court is ordered to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 2, 2019.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Christopher Maurice McDowell
7870 West Flagler Street
Miami, FL 33144